IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

LANDLORD SERVICE BUREAU, INC.


      Plaintiff,

v.

CENTERS FOR DISEASE CONTROL
AND PREVENTION; DR. ROCHELLE
WALENSKY, M.D., Ph.D., in her official
capacity as Director, Centers for Disease
Control and Prevention; SHERRI A.
BERGER, MSPH, in her official capacity
as Acting Chief of Staff, Centers for
Disease Control and Prevention;
Department of Health and Human
Services; NORRIS COCHRAN, in his official
capacity as acting Secretary of Health and
Human Services; and MERRICK B.
GARLAND, in his official capacity as
Attorney General of the United
States, Defendants.

      Defendants.

NO.:   2:21-cv-346

## **COMPLAINT**

AND NOW, comes Landlord Service Bureau Inc. by and through its undersigned

counsel, John P. Corcoran, Jr., Esquire, and the law firm of Jones, Gregg, Creehan &

Gerace, LLP, and files the following Complaint against Defendants and in support

thereof avers as follows:

## **PREAMBLE**

The Plaintiff, Landlord Service Bureau, Inc., is a Pennsylvania landlord service

organization which provides, among other services, advocacy to protect the rights and

interests of its landlord members throughout Western Pennsylvania.  In this case, members of Landlord Service Bureau, Inc. are being injured due to the continuing unauthorized moratorium on evictions promulgated by the Centers for Disease Control and Prevention and further identified as *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55292 (September 4, 2020), as amended  86 Fed. Reg. 8020 (February 3, 2021) [extending Order to March 31, 2021] ("CDC Order").  As soundly held by the United States Northern District Court for Ohio in *Skyworks, Ltd. v. Centers for Disease Control and Prevention, et al.,* 2021 WL 911720, Case No. 5:20-cv-02407, March 10, 2021 (J. Phillip Calabrese, District Judge) (N.D. Ohio), the eviction moratorium in the CDC Order exceeds the statutory authority of Congress provided to an agency and, therefore, is unlawfully promulgated.  To the extent, that the *Skyworks* decision is limited to its jurisdictional scope of the Northern District of Ohio, this action is being brought in the Western District of Pennsylvania on behalf of landlords throughout Western Pennsylvania seeking similar Injunctive Relief under the Declaratory Judgment Act based on the CDC Order exceeding the Centers for Disease Control's authority as provided under Section 361 of the Public Health Service Act and 42 U.S.C.A. § 264  and 42 C.F.R. § 70.2.

Furthermore, Declaratory  and Injunctive Relief is also requested in that the CDC Order violates the impairment of contract clause provisions set forth in Article I, § 10, of the United States Constitution. (Landlord Service Bureau has an action pending in the Court of Common Pleas of Allegheny County concerning the recent enactment of the *New Chapter 782 Temporary Eviction Regulation for Disease Prevention Control Due To COVID 19.* by the City of Pittsburgh which constitutes an illegal Impairment of

2

contracts in violation of Article 1, Section 17 of the Pennsylvania Constitution. That case is styled *Landlord Service Bureau Inc. v. the City of Pittsburgh and Council of the City of Pittsburgh*, GD-21-1813.)


## BACKGROUND

1.      On August 8, 2020, the former President issued an "Executive Order on Fighting the Spread of COVID-19 by Providing Assistance to Renters and Homeowners." Among other things, the executive order directed the Secretary of Health and Human Services and the Director of the Centers for Disease Control and Prevention to consider whether a moratorium on evictions would help stem the spread of COVID-19.

2.      Referring to the expiration of a moratorium on certain evictions under the CARES Act, the executive order states, "With the failure of the Congress to act, my Administration must do all that it can to help vulnerable populations stay in their homes in the midst of this pandemic."

3.      The result was an Order issued by the CDC that took effect on September 4, 2020. The Order imposes a nationwide ban on evictions of certain tenants until at least December 31, 2020 "unless modified or extended.", and the CDC Order has been subsequently modified to extend to March 31, 2021. *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55292 (September 4, 2020), as amended  86 Fed. Reg. 8020 (February 3, 2021) [extending Order to March 31, 2021] ("CDC Order").

3

4.      Whether the former President was correct that Congress "fail[ed] to act" or simply chose not to act, the executive order was surely correct that Congress has not, in fact, imposed an eviction moratorium since the expiration of the one that existed under the CARES Act. Congress certainly did not authorize the CDC to impose such a moratorium in the Health Services Act, the law from which the CDC purports to derive its authority for the moratorium.

5.      That law and the regulations adopted under it, specifically 42 C.F.R. § 70.2 (Measures in the event of inadequate local control) allow the CDC to take certain actions—inspection, fumigation, disinfection, and sanitation, among others—to stop the spread of infectious disease across state lines. Nowhere does it authorize the CDC to impose a nationwide eviction moratorium.

6.      The CDC Order represents a sweeping assumption of power by an administrative agency that it simply does not possess. The moratorium alters the contractual relationships of perhaps millions of people across the country. It suspends legal proceedings in every state. It forces one segment of the population—landlords—to bear a disproportionate share of the costs of the pandemic because they provide the rental housing that so many Americans need.

7.      Furthermore, the CDC Order is an unlawful impairment of contracts because it alters the fundamental contractual rights between landlords and tenants.

8.      As noted by the United States District Court in Ohio, If the federal government possesses the legitimate power to impose a nationwide eviction moratorium, that power must be exercised by Congress. Until Congress acts, the executive branch may not.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

10.    The Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of the action is situated in this district. Venue is also proper under 28 U.S.C § 1391(e)(1)(B) because the defendants are officers, employees, and agencies of the United States and a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of property that is the subject of the action is situated in this district. *See also* 5 U.S.C. § 703 (venue for actions under the Administrative Procedure Act generally proper in "a court of competent jurisdiction").

## PARTIES

12.    Plaintiff, Landlord Service Bureau, Inc. ("Landlord Service Bureau" or "Plaintiff"), is a Pennsylvania corporation which represents the interests of over 4,200 building owners, managers, and landlords in Allegheny County, Westmoreland County and other locales, with its principal place of business located at 12801 Route 30, Suite #5, North Huntington, PA 15642.

13.    Plaintiff, Landlord Service Bureau, through the auspices of the Pennsylvania Landlord Legal Defense Fund, files legal actions on behalf of landlords to

protect the rights and interests of landlords throughout Western Pennsylvania.

14.     The Plaintiff, Landlord Service Bureau, has standing in that it represents a representative class of property owners and property managers engaged in the rental of properties in Allegheny County and Westmoreland County and these landlords are all adversely effected by the enactment of the federal declaration Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Proclamation 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020) and Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020), as amended  86 Fed. Reg. 8020 (February 3, 2021) [extending Order to March 31, 2021] ("CDC Order").

15.     Because of the CDC Order, numerous landlords are unable to reclaim their property and rent to other tenants and who are able to pay rent.

16.     Landlord Service Bureau members are harmed because tenants have refused to pay rent due to the CDC Order and also believe they are never required to pay rent pursuant to the CDC Order.

17.     Numerous landlord members of Landlord Service Bureau are suffering financial harm since there are no rent proceeds to pay for the taxes, mortgages, upkeep of common areas, and salaries of various employees of the Landlords.

18.     Landlord Service Bureau members suffer injury from the non-paying tenant who submits a Renter's Declaration under the CDC Order because they cannot take action to evict such tenant without the risk of incurring criminal liabilities.

19.     Landlord Service Bureau has representational standing because its members would otherwise have standing to sue in their own right, the interests at stake

6

are germane to the organization's purpose, and neither the claim asserted, nor the relief requested requires participation of the individual members in the lawsuit. *American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 181 (2000)); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) as cited in *Skyworks, Ltd. v. Centers for Disease Control and Prevention, et al.*, 2021 WL 911720 at * 7, Case No. 5:20-cv-02407, March 10, 2021 (J. Phillip Calabrese, District Judge) (N.D. Ohio),

20.     Dr. Rochelle Walensky, M.D., MPH is the Director of the CDC. The CDC's public statement announcing its eviction moratorium, which is the agency action challenged in this case, states that the order was issued by Director Robert R. Redfield, Jr., Dr. Walensky's predecessor. She is sued in her official capacity.

21.     Sherri A. Berger, MSPH is the acting Chief of Staff for the CDC and the CDC employee under whose name the CDC eviction moratorium it is empowered and issued.. She is sued in her official capacity.

22.     Norris Cochran is the acting Secretary of Health and Human Services (HHS). He is sued in his official capacity.

23.     HHS is an agency of the United States government.

24.     Merrick B. Garland is the Attorney General of the United States and the head of the Department of Justice, which has enforcement authority under the Order implementing the CDC Order. He is sued in his official capacity.

## GENERAL ALLEGATIONS

25.    On March 13, 2020, former President Trump declared COVID-19 a national emergency.  85 Fed. Reg. at 15337-38.  Since then, the nation has undertaken extensive and unprecedented steps to manage the spread of the disease and address the economic fallout.  Of relevance here, Congress passed, and President Trump signed the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-134 (Mr. 27, 2020) (the "CARES Act").  Section 4022 through 4024 of the CARES Act addressed housing-related issues, including protections for holders of federally backed mortgages. *See id.* § 4024(b).  The statute prevented a landlord from giving a notice of eviction to a tenant residing in a covered property until the 120-day statutory eviction moratorium expired and, even then, forestalled eviction proceedings for an additional 30 days.  *Id.* § 4024(c).  This moratorium and other protections for renters expired on July 24, 2020.

26.    On August 8, 2020, former President Trump issued an executive order directing the Secretary of Health and Human Services and the Director of the CDC to "consider whether any measures temporarily halting residential evictions for any tenants for failure to pay rent are reasonably necessary to prevent the further spread of COVID-19 from one State or possession into any other State or possession." *Fighting The Spread Of COVID-19 By Providing Assistance To Renters And Homeowners*, Executive Order 13,945, 85 Fed. Reg. 49,935, 49,936 (Aug. 8, 2020).

27.    Pursuant to the Executive Order the CDC issued its first eviction moratorium on September 4, 2020.  *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020).  Acting on an emergency basis pursuant to Section 361 of the Public Health Service Act, 42

U.S.C. §264, and 42 C.F.R. § 70.2, and affirmatively disclaiming promulgation of a rule under the Administrative Procedure Act, the CDC "determined the temporary halt in evictions in this Order constitutes a reasonably necessary measure . . . to prevent the further spread of COVID-19 throughout the United States." 85 Fed. Reg. at 55,296. as amended  86 Fed. Reg. 8020 (February 3, 2021) [extending CDC Order to March 31, 2021]

28.     During this time period, according to the CDC Order, "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action shall not evict any covered person from any residential property in any State or U.S. territory in which there are documented cases of COVID-19 that provide a level of public-health protections below the requirements listed in this Order." *Id*. at 55,296.

29.     A "covered person" under the Order is any residential tenant who "provides to their landlord" a declaration (known as a "Renter's or Homeowner's Declaration," a sample of which is appended to the Order)

30.     Although the Order and declaration state that tenants who avail themselves of the eviction moratorium are "still required to pay rent and follow all the other terms of their lease" and may be assessed "fees, penalties or interest for not paying rent," *id*. at 55,297, the Order deprives landlords of one of the primary means of holding tenants to the obligations of their lease—the right to evict.

31.     The Order defines "evict" and "eviction" broadly to include "*any action* by a landlord … to remove or cause the removal of a covered person from a residential property." *Id*. at 55,293.

32.     The Order does not define "any action." It does, however, impose stiff

criminal penalties on landlords who initiate any such (undefined) action "to remove or cause the removal" of a tenant from the landlord's property. Individuals who violate the order face a fine of up to $100,000, up to a year in jail, or both. Organizational landlords face fines of up to $200,000 per event. *Id*. at 55,296.

33.     The Court of Common Pleas of Allegheny County, Pennsylvania, has entered Orders preventing the eviction of tenants pursuant to the guidelines set forth in the CDC Order.

34.     On February 24, 2021, the Court of Common Pleas of Allegheny County, Pennsylvania, entered an Order for temporary procedures regarding certain landlord tenant actions wherein the Court incorporates the provisions of the CDC Order which are now applicable throughout Allegheny County, Pennsylvania. (A copy of the February 24, 2021 Allegheny County Court of Common Pleas orders is attached as Exhibit "A".)

35.     Landlord Service Bureau members who are landlords throughout Western Pennsylvania are prohibited from evicting tenants despite sometimes falling  behind in rent for substantial sums that exceed the ability of the landlord to maintain their mortgages and taxes due on the rental properties.

36.     The CDC Order does not indicate whether a landlord is permitted to challenge any of the claims in a Renter's Declaration or in what venue that might be done. On October 9, 2020, however, the CDC issued non-binding "guidance"— in the form of "Frequently Asked Questions"— that purports to clarify whether local courts can entertain eviction actions at all under the Order. The FAQ states that "The Order does not preclude a landlord from challenging the truthfulness of a tenant's declaration in any

state or municipal court" and that the Order is not "intended to prevent landlords from starting eviction proceedings, provided that the actual eviction of a covered person for non-payment of rent does NOT take place during the period of the Order." It also states, however, that the process for adjudicating issues the Order presents "will be carried out according to state and local laws and rules" and that "State and local courts may take judicial notice of the CDC Order, and the associated criminal penalties that may be imposed for non-compliance in making a formal judgment about any pending or future eviction action filed while this Order remains in effect." Accordingly, even where there may be grounds to challenge a Renter's Declaration, CDC's Order forces landlords to choose between either suspending efforts to evict non-paying tenants or spending significantly more on attorney's fees for an evidentiary hearing that would not otherwise be necessary.  (A copy of the Guidance is attached as Exhibit "B").

37.    The CDC Order cites, as legal authority for the eviction moratorium, section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 CFR 70.2. Neither the statute nor the regulation purports to give the CDC or HHS the authority to impose a nationwide eviction moratorium.

38.    Instead, these provisions authorize HHS and the CDC to prevent the spread of communicable diseases from foreign countries and from state to state through such measures as quarantine, inspection, disinfection and licensing, among others.

39.    The regulation, 42 CFR 70.2, reflects this statutory language. It is found in a subchapter of the Public Health code entitled "Quarantine, Inspection, and Licensing." The subpart within that chapter where section 70.2 is found is entitled "Interstate Quarantine." Section 70.2 is entitled "Measures in the event of inadequate state

control." It states in full:

> Whenever the Director of the Centers for Disease Control and Prevention determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession, he/she may take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection.

40.     The CDC contends that the Order is not a "rule" under the Administrative Procedure Act that must be promulgated according to the notice and comment rulemaking procedures in 5 U.S.C. § 553. Instead, according to the CDC, the Order is "an emergency action taken under the existing authority of 42 CFR 70.2." 85 Fed. Reg. at 55,296. But even if the Order is a rule, the CDC contends that it is exempt from notice and comment rulemaking under 5 U.S.C. § 553(b)(3)(B), because, due to "the public health emergency created by COVID-19, it would be impracticable and contrary to the public health, and by extension the public interest, to delay the issuance and effective date of this Order." *Id.*

## COUNT I

### REQUEST FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AS THE CDC ORDER CONSTITUTES AN ILLEGAL IMPAIRMENT OF CONTRACTS IN VIOLATION OF ARTICLE 1 §10 OF THE UNITED STATES CONSTITUTION

41.     The preceding paragraphs are incorporated herein by reference.

42.     There are currently written lease agreements executed by landlords and tenants in Allegheny County and Westmoreland County in Western Pennsylvania, which were in full force and effect prior to the effective date of the CDC Order.

43.     The inability to terminate leases and evict tenants violates the impairment of contracts clause of the United States Constitution.

44.     Article I of the United States Constitution states:

> No state shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, *ex post facto* Law, or **Law impairing the Obligation of Contracts**, or grant any Title of Nobility.

United States Constitution, Art. I, §10 Clause 1 (emphasis added).

45.     It is undisputed that members of Landlord Service Bureau and various tenants throughout Allegheny and Westmorland County, Pennsylvania, have entered into contractual relationships for the provision of rental housing with tenants.

46.     The continuing implementation of the CDC Order prohibits an eviction of any tenant even though said evictions are specifically authorized by the Pennsylvania Landlord and Tenant Act of 1951  as codified at 68 PS §§ 250.101-250.510-B.

47.     The CDC Order  prohibits any eviction in violation of the Pennsylvania Landlord and Tenant Act of 1951 and the CDC Order violates the contracts between landlords and tenants.

48.     Furthermore, the obligation that no landlord can evict due to previous tenant non-payment and the tenant is allowed to continue to stay in their residence without paying rent impairs the existing contracts between landlords and tenants.

49.    The impairment of contract is substantial because the fundamental rights to contract between the landlord and tenant are being interfered with by the United States Government because a landlord is forced to continue in leasing agreements without rights to terminate under law.

50.    A violation of constitutional rights constitutes irreparable harm *per se* as noted by the United States Supreme Court decision in *Elrod v. Burns*, 427 U.S. 347 (1976).

WHEREFORE, Plaintiff respectfully requests Declaratory and Injunctive Relief pursuant to 5 U.S.C. §703 and 705 and 28 U.S.C.A. §2201 (a) as follows:

1.    A judgment declaring that the CDC Order more specifically identified as *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55,292 (Sept. 4, 2020) and *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 86 Fed. Reg. 8020 (Feb. 3, 2021) violates Article 1 §10 of the United States Constitution prohibiting the impairment of contracts.

2.    Preliminary and permanent injunctions setting aside the CDC Order and forbidding Defendants from enforcing it;

3.    An award of reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and

4.    Any other relief that the Court deems just and proper.

## COUNT II

### REQUEST FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF BECAUSE THE CDC ORDER EXCEEDS STATUTORY AND REGULATORY AUTHORITY
### (VIOLATION OF 42 U.S.C. § 264, 42 CFR 70.2, AND 5 U.S.C. § 706(2)(A) AND (C))

51.     The preceding paragraphs are incorporated herein by reference.

52.     The Administrative Procedure Act provides for judicial review of final agency action. *See* 5 U.S.C. § 704. The Order is a final agency action because it represents the consummation of CDC's decision to impose an eviction moratorium, and because it affects legal rights and obligations by preventing landlords represented by the Plaintiff and other landlords from asserting and protecting their property rights by evicting tenants who have not paid their rent.

53.     Under the Administrative Procedure Act, this Court is authorized to set aside and hold unlawful agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or that is in excess of statutory authority, or limitations, or short of statutory right. *See* 5 U.S.C. § 706(2)(A), (C).

54.     The CDC's Order prohibits "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action" from evicting "any covered person from any residential property in any jurisdiction to which this Order applies during the effective period of the Order." 85 Fed. Reg. at 55,292.

55.     Plaintiff's landlord members have  tenants that are "covered" persons under the CDC Order because they have submitted an executed Renter's or Owner's Declarations.

56.   The CDC Order applies in jurisdictions that do not "provide[] the same or greater level of public-health protection than the requirements listed in" the Order. 85 Fed. Reg. at 55,292.

57.   The CDC Order defines "eviction" broadly to include "*any action* by a landlord … to remove or cause the removal of a covered person from a residential property." 85 Fed. Reg. at 55,293.

58.   Plaintiff's landlord members are not able to exercise their rights to enforce their contracts because of the CDC Order.

59.   Because of the CDC Order, the Allegheny County Courts has ceased proceedings to evict tenants for nonpayment of rent. (See Exhibit "A")

60.   The Order purports to derive its statutory and regulatory authority from 42 U.S.C. § 264 and 42 CFR 70.2.

61.   Section 264 nowhere authorizes anyone within HHS to make or enforce regulations that impose eviction moratoria, much less eviction moratoria on a national scale.

62.   42 CFR 70.2 nowhere authorizes anyone within the CDC to impose eviction moratoria at all, much less eviction moratoria on a national scale.

63.   Those who violate the Order are subject to criminal penalties, including fines and jail time, under 18 U.S.C. §§ 3559 and 3571, 42 U.S.C. § 271, and 42 CFR 70.18.

64.   None of the relevant statutes or regulations purport to authorize CDC to criminalize otherwise lawful behavior.

65.   The CDC Order is not in accordance with law and is in excess of statutory

authority provided in Section 361 of the Public Health Service Act, 42 U.S.C. § 264(a), and the regulation at 42 C.F.R. § 70.2 promulgated pursuant to the statute and is therefore invalid.

66.     As a result of the Order, Plaintiff's landlord members are unable to evict their tenants. Plaintiff landlord members are thus unable to avail themselves of a legal means of asserting and protecting their rights to property, to contract, and to due process of law, as guaranteed under the Pennsylvania Landlord and Tenant Act of 1951 as codified at 68 PS §§ 250.101-250.510-B..

WHEREFORE, Plaintiff respectfully requests Declaratory and Injunctive Relief pursuant to 5 U.S.C. §703 and 705 and 28 U.S.C.A. §2201 (a) as follows:

1.     A judgment declaring that the CDC Order more specifically identified as *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55,292 (Sept. 4, 2020) and *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 86 Fed. Reg. 8020 (Feb. 3, 2021)—exceed the statutory authority of the Center for Disease Control provided in Section 361 of the Public Health Service Act, 42 U.S.C. § 264(a), and the regulation at 42 C.F.R. § 70.2 promulgated pursuant to the statute, and are, therefore, invalid.

2.     Preliminary and permanent injunctions setting aside the CDC Order Moratorium and forbidding Defendants from enforcing it;

3.     An award of reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and

4.     Any other relief that the Court deems just and proper.

## COUNT III

### THE CDC'S ORDER IS AN UNCONSTITUTIONAL EXERCISE OF LEGISLATIVE POWER (VIOLATION OF THE NONDELEGATION DOCTRINE OF ARTICLE 1 §1 OF THE UNITED STATES CONSTITUTION)

67.     The preceding paragraphs are incorporated herein by reference.

68.     If the CDC's Order does not exceed its authority under the relevant statutes and regulations, then 42 U.S.C. § 264 constitutes a breathtakingly broad, and therefore unconstitutional, delegation of Congress's power to make law.

69.     Article I, Section 1 of the U.S. Constitution states: "All legislative powers herein granted shall be vested in a Congress of the United States."

70.     Often referred to as the "vesting clause," this provision provides one of the cornerstones of the Constitution's separation of powers by ensuring that Congress, and Congress alone, makes the law.

71.     Accordingly, Congress may not delegate its lawmaking power to other branches of government, particularly the executive branch and executive agencies such as HHS and CDC. Otherwise, the same branch of government that enforces the law would also possess the power to make the law.

72.     When passing a law, therefore, Congress must make the fundamental policy decisions with which the law is concerned and leave to the executive branch only the job of filling in the details or applying the law to a given set of facts.

73.     The CDC, by issuing an Order imposing a nationwide eviction moratorium, made precisely the sort of policy decision that is, under the vesting clause of Article I, reserved for Congress. The CDC's Order halts a legal process that exists in the Western District of Pennsylvania and every state in the nation.

74.     Congress, however, did not list eviction moratoria among the actions HHS may take in 42 U.S.C. § 264 and HHS did not list it among the actions the CDC may take in 42 CFR 70.2.

WHEREFORE, Plaintiff respectfully requests Declaratory and Injunctive Relief pursuant to 5 U.S.C. §703 and 705 and 28 U.S.C.A. §2201 (a) as follows:

1.     A judgment declaring that the CDC Order more specifically identified as *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 85 Fed. Reg. 55,292 (Sept. 4, 2020) and *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, 86 Fed. Reg. 8020 (Feb. 3, 2021)—exceed the statutory authority of the Center for Disease Control provided in Section 361 of the Public Health Service Act, 42 U.S.C. § 264(a), and the regulation at 42 C.F.R. § 70.2 promulgated pursuant to the statute, and are, therefore, invalid.

2.     Preliminary and permanent injunctions setting aside the CDC Order and forbidding Defendants from enforcing it;

3.     An award of reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority; and any other relief that the Court deems just and proper.

Respectfully submitted,

JONES, GREGG, CREEHAN & GERACE, LLP

DATED:  MARCH 15, 2021            BY:  _____
                                       JOHN P. CORCORAN, JR., ESQUIRE
                                       PA.ID. NO. 74906
                                       411 SEVENTH AVENUE
                                       SUITE 1200
                                       PITTSBURGH, PA 15219
                                       (412) 261-6400