IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

LANDLORD SERVICE BUREAU, INC.

     Plaintiff,

v.                                                           NO.: NO.:  2:21-CV-00346-WSH

CENTERS FOR DISEASE CONTROL
AND PREVENTION; DR. ROCHELLE
WALENSKY, M.D., Ph.D., in her official
capacity as Director, Centers for Disease
Control and Prevention; SHERRI A.          **PLAINTIFF'S MEMORANDUM OF**
BERGER, MSPH, in her official capacity     **LAW IN SUPPORT OF MOTION FOR**
as Acting Chief of Staff, Centers for      **EXPEDITED SUMMARY JUDGMENT**
Disease Control and Prevention;
Department of Health and Human
Services; NORRIS COCHRAN, in his official
capacity as acting Secretary of Health and   FILED ON BEHALF OF PLAINTIFF
Human Services; and MERRICK B.
GARLAND, in his official capacity as         JOHN P. CORCORAN, JR., ESQUIRE
Attorney General of the United               PA. ID. NO. 74906
States, Defendants.

     Defendants.                            JONES, GREGG, CREEHAN &
                                               GERACE, LLP
                                             411 SEVENTH AVENUE
                                             SUITE 1200
                                             PITTSBURGH, PA 15219
                                             (412) 261-6400

**TABLE OF CONTENTS**

Page

I.      SUMMARY OF ARGUMENT.................................................................   2

II.     STANDARD OF REVIEW...................................................................   2

III.    RELEVANT FACTS...........................................................................   3

IV.     RELEVANT RECENT DECISIONS ...................................................   7

V.      ARGUMENT ......................................................................................   8

        A.   Section 361 Of The Public Health Services Act (42 U.S.C.
             § 264(a)) Limits The Secretary's Power To Specific Narrow
             Enumerated Actions To Stop The Spread Of A
             Communicable Disease, Not An Unfettered Power To
             Impose A Nationwide Eviction Moratorium .............................   8

        B.   Under The Two Step Analysis Of *Chevron USA, Inc. v.
             Nat'l Re. Def. Council, Inc.*, 467 U.S. 837 (1984) The
             Statutory Text Of The Public Health Services Act
             Indicates The Intent Of The Congress To Limit The
             Authority Of The Secretary To The Enumerated Quarantine
             Measures..................................................................................   11

        C.   The Current CDC Order Violates The Impairment Of
             Contracts Clause Of The United States And Pennsylvania
             Constitution.............................................................................   14

        D.   This Honorable Court Should Vacate The Current CDC Order
             As A Violation Of The Administrative Procedures Act............   16

        CONCLUSION      ................................................................................   17

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.,*
    No. 20-cv-3377, _____ F.Supp.3d _____, _____,
    2021 WL 1779282 at 1* (D.D.C. May 5, 2021) .................................. *passim*

*Allied Structural Steel Co. v. Spannaus,*
    438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978) ................ 15, 16

*Barnes v. E-Systems, Inc. Group Hospital Medical & Surgical Ins. Plan,*
    501 U.S. 1301, 1305 (1991) ............................................................... 4

*Burns v. Pub. Sch. Employees Ret. Bld.,*
    853 A.2d 1146 (Pa. Cmwlth. 2004) .................................................... 14

*Byrne v. Beers,*
    No. 13-695, 2014 WL 2742800, at *3 (E.D. Pa. June 17, 2014)........ 3

*Camp v. Pitts,*
    411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) ................ 3

*Center for Native Ecosystems v. Salazar,*
    795 F.Supp.2d 1236 (D. Colo. 2011)................................................. 17

*Chevron USA, Inc. v. Nat'l Re. Def. Council, Inc.,*
    467 U.S. 837, 104 S.Ct. 2778 (1984) ................................................ 11, 12, 13

*Citizens Committee for Hudson Val. v. Volpe,*
    425 F.2d 97 (2d Cir. 1970) ................................................................. 16

*City of Pittsburgh v. Pennsylvania Public Utility Commission,*
    165 Pa. Super. 519, 69 A.2d 844 (1949)........................................... 16

*Coleman v. Paccar, Inc.,*
    424 U.S. 1301, 1304 (1976) ............................................................... 5

*Dorley v. Cardinale,*
    119 F.Supp.3d 345, 351 (E.D. Pa. 2015) .......................................... 3

*Found of Am. v. Springer,*
    498 F.Supp.2d 203, 207 (D.D.C. 2007)............................................. 3

Page

General Motors Corp. v. Romein,
    503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) ............ 15

HAPCO v. City of Philadelphia,
    482 F.Supp. 337 (E.D. Pa. 2020) ...................................................... 15, 16

Mariniello v. Shell Co.,
    511 F.2d 853, 859 (3d Cir. 1975) ..................................................... 14

Nieves v. Hess Oil Virgin Islands Corp.,
    819 F.2d 1237, 1243 (3d Cir. 1987)................................................... 15

Parker v. Citizens Committee for Hudson Valley,
    400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970) .......................... 16

Si Min Cen v. Att'y Gen.,
    825 F.3d 177, 186 (3d Cir. 2016) ..................................................... 12

Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention,
    No. 5:20-cv-2407, ____ F.Supp.3d ____, ____,
    2021 WL 911720, at *12 (N.D. Ohio Mar. 10, 2021)......................... 7, 8, 10, 13

Soccer Centers, LLC v. Zuchowski,
    No. 17-1024, 2017 WL 4570290, at *5 (D.N.J. Oct. 13, 2017........... 2, 3

Terkel v. Ctrs. for Disease Control & Prevention,
    No. 6:20-cv-564, ____ F.Supp.3d ____, ____,
    2021 WL 742877, at *1-2, 10-11 (E.D. Tex. Feb. 25, 2021),
    Appeal filed, No. 21-40137 (5th Cir. 2021) ........................................ 8

Tidal Oil Co. v. Flanagan,
    263 U.S. 444, 451 (1924) ................................................................. 14

Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.,
    No. 2:20-cv-2692, ____ F.Supp.3d ____, ____,
    2021 WL 1171887 at *4 (W.D. Tenn. Mar. 15, 2021) ........................ 7, 10, 13

U.S. v. EME Homer City Generation, L.P.,
    727 F.3d 274, 293 (3rd Cir. 2013) …………………………………………… 12

Utility Air Regulatory Group v. EPA,
    573 U.S. 302, 324 (2014) ................................................................. 4

**Page**

**Statues**

| | | |
|---|---|---|
| 5 U.S.C. § 706 | ........................................................................ | 3 |
| 42 U.S.C. § 264(a) | ................................................................ | *passim* |
| 42 C.F.R. § 70.2 | ..................................................................... | 2, 3, 9 |
| 85 Fed. Reg. at 55,292 (Sept. 4, 2020) | ........................................... | 4 |

**Other**

| | | |
|---|---|---|
| U.S. Const. art. 1 § 10 | ............................................................. | 14, 15 |

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

LANDLORD SERVICE BUREAU, INC.

     Plaintiff,

v.                                                                NO.: NO.: 2:21-CV-00346-WSH

CENTERS FOR DISEASE CONTROL
AND PREVENTION; DR. ROCHELLE
WALENSKY, M.D., Ph.D., in her official
capacity as Director, Centers for Disease
Control and Prevention; SHERRI A.
BERGER, MSPH, in her official capacity
as Acting Chief of Staff, Centers for
Disease Control and Prevention;
Department of Health and Human
Services; NORRIS COCHRAN, in his official
capacity as acting Secretary of Health and
Human Services; and MERRICK B.
GARLAND, in his official capacity as
Attorney General of the United
States, Defendants.

     Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXPEDITED SUMMARY JUDGMENT

     AND NOW, comes Landlord Service Bureau Inc. by and through its undersigned

counsel, John P. Corcoran, Jr., Esquire, and the law firm of Jones, Gregg, Creehan &

Gerace, LLP, and Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Plaintiff

Landlord Service Bureau moves for the granting of Summary Judgment on the

Declaratory Judgment action based on the Current CDC Eviction Moratorium being in

violation of Section 361 of the Public Health Service Act, 42 U.S.C. § 264(a) and the

United States Constitution.

1

## I.      **SUMMARY OF ARGUMENT**

The Current CDC Order on its title page cites as legal authority for the Eviction Moratorium Section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 C.F.R. 70.2. Section 361 of the Public Health Service Act grants authority to the Secretary to enforce regulations to prevent infectious disease, but that authority is limited by the textual limitations to enumerated actions in Section 361. The narrow list of measures permitting "inspection, fumigation, disinfection, sanitation, pest extermination and destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings" as set forth in the Public Health Services Act cannot be expanded to impose a national moratorium of evictions as held by numerous Federal District Courts throughout the country. (See Relevant Recent Decisions at p. 7 of this Brief). There is no doubt the pandemic is a serious health emergency. Nevertheless, the Public Health Services Act cannot be revised by a Court to grant to the Secretary unbridled power, when only Congress has the authority to revise Section 361 of the Public Health Services Act, but has chosen not to do so.

Finally, this expansion of the Public Health Services Act interferes with a Landlord's and Tenant's freedom to contract guaranteed by the Constitution of the United States and Commonwealth of Pennsylvania. The restriction on an ability to evict for non-payment goes to the very substance of a Landlord-Tenant agreement. Therefore, this impairment of contract also requires the vacating of the current CDC Order.

## II.      **STANDARD OF REVIEW**

When reviewing agency action under the APA, the District Court "sits as an appellate tribunal and the entire case on review is a question of law." *Soccer Centers,*

*LLC v. Zuchowski*, No. 17-1024, 2017 WL 4570290, at \*5 (D.N.J. Oct. 13, 2017). Here, "the administrative agency [was] the finder of fact, and [this Court] does not need to determine whether there are disputed facts to resolve at trial." *Byrne v. Beers,* No. 13-6953, 2014 WL 2742800, at \*3 (E.D. Pa. June 17, 2014). The Court's review is limited to the administrative record on which the agency based its decision. *See* 5 U.S.C. § 706; *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). "Summary Judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Soccer Centers, LLC*, 2017 WL 4570290, at \*5 (citing *Stuttering Found of Am. v. Springer*, 498 F.Supp.2d 203, 207 (D.D.C. 2007)).

While Summary Judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review, because the district judge sits as an appellate tribunal in such cases, the usual summary judgment standard does not apply. *Dorley v. Cardinale*, 119 F.Supp.3d 345, 351 (E.D. Pa. 2015).

### III.   **RELEVANT FACTS**

On September 4, 2020, the CDC issued the "Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19" ("Original CDC Order"), pursuant to § 361 of the Public Health Service Act, 42 U.S.C. § 264(a), and 42 C.F.R. § 70.2. 85 Fed. Reg. 55,292 (Sept. 4, 2020). (Administrative Record at p. 1-7). "In this order, the CDC determined that a temporary halt on residential evictions was 'a reasonably necessary measure ... to prevent the further spread of COVID-19.'" *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, No. 20-cv-3377, —— F.Supp.3d ——, ——, 2021

WL 1779282, at *1 (D.D.C. May 5, 2021) appeal filed May 5, 2021 (D.C. Cir. 2021) (*citing* 85 Fed. Reg. at 55,296). The CDC Order was originally slated to expire on December 31, 2020. 85 Fed. Reg. at 55,297. As part of the Consolidated Appropriations Act, however, Congress extended the CDC Order to apply through January 31, 2021, Pub. L. No. 116-260, § 502, 134 Stat. 1182 (2020). On January 29, 2021, the CDC extended the order through March 31, 2021. Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 8020 (Feb. 3, 2021). (Administrative Record at p. 7-13). "In this extension, the CDC updated its findings to account for new evidence of how conditions had worsened since the original order was issued, as well as '[p]reliminary modeling projections and observational data' from states that lifted eviction moratoria 'indicat[ing] that evictions substantially contribute to COVID-19 transmission.'" *Id.* at 8022. (Administrative Record at p. 9). The CDC later extended the order through June 30, 2021. Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 16,731 (Mar. 31, 2021)" [Administrative Record at p. 15]; *Ala. Ass'n of Realtors —— F.Supp.3d at ——,* 2021 WL 1779282, at *2. Justice Kavanaugh of the United States Supreme Court, ruling upon an Application to vacate a stay in the matter of *Alabama Association of Realtors,* issued a concurring opinion, stating:

> I agree with the District Court and the applicants that the Centers for Disease Control and Prevention exceeded its existing statutory authority by issuing a nationwide eviction moratorium. *See Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014). Because the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriated rental assistance funds, I vote at this time to deny the application to vacate the District Court's stay of its order. *See Barnes v. E-Systems, Inc. Group Hospital Medical & Surgical Ins. Plan*, 501 U. S. 1301, 1305 (1991) (Scalia, J., in chambers) (stay depends in part on balance of equities); *Coleman v. Paccar Inc.*, 424 U.S. 1301, 1304 (1976) (Rehnquist, J., in chambers). In my view, clear and specific congressional authorization

4

(via new legislation) would be necessary for the CDC to extend the moratorium past July 31.

*Ala. Ass'n of Realtors*, 141 S. Ct. at 2320–21 (Kavanaugh, J., concurring). Therefore, the Stay remained in place and was due to expire on July 31, 2021. On July 29, 2021, the White House announced that the CDC would not extend the eviction moratorium beyond July 31 because "the Supreme Court has made clear that this option is no longer available. In June, when CDC extended the eviction moratorium until July 31st, the Supreme Court's ruling stated that 'clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31.'" The White House, *Statement by White House Press Secretary Jen Psaki on Biden-Harris Administration Eviction Prevention Efforts* (July 29, 2021), https://bit.ly/3jm0K17. The White House said that, "in light of the Supreme Court's ruling, you know, the President is going to work with Congress to make that happen." The White House, *Press Briefing by Principal Deputy Press Secretary Karine Jean-Pierre* (July 29, 2021), https://bit.ly/3ioiXvL.

Therefore, at a press briefing on August 2, 2021, the White House maintained its view that the CDC had no authority to extend the moratorium "without clear and specific congressional authorization." The White House, *Press Briefing by Press Secretary Jen Psaki and White House American Rescue Plan Coordinator and Senior Advisor to the President Gene Sperling* (August 2, 2021), https://bit.ly/3xoNzBt. "To date, the CDC Director and her team have been unable to find legal authority, even for a more targeted eviction moratorium that would focus just on counties with higher rates of COVID spread." *Id.* Nevertheless, the continuing moratorium on evictions promulgated by the Centers for Disease Control and Prevention ("CDC") was entered on the evening of August 3,

5

2021 and further identified as *Temporary Halt in Residential Evictions in Communities with Substantial or High Levels of Community Transmission of COVID-19 to Prevent the Further Spread of COVID-19* (Aug. 3, 2021) (" Current CDC Order"). (Administrative Record at  p. 30-38).

Landlord Service Bureau Inc. represents over 1000 landlords throughout Western Pennsylvania. (Decl. of Craig Kostelac at ¶ 3). (Dkt. #36). Members of Landlord Service Bureau have had tenants that stopped paying rent and invoked the protections of the Original CDC Order and Current CDC Order to avoid eviction. (See Decl. of Gainfort at ¶¶ 5, 6 and Decl. of Vangenewitt at ¶¶ 7-10). (Dkt. #36). In fact, as recent as two weeks ago, landlords have been prevented under the Current CDC Order from proceeding before Magistrate district judges. (Decl. of Vangenewitt at ¶ 7). Indeed, based upon the CDC's Eviction Moratorium, the Magistrate Court has refused to move forward on the eviction process with certain tenants. (Decl. of Gainfort at ¶ 4).  At the current time, Gainfort has  four (4) tenants that owe $5,729.00 in rent and we cannot evict due to the CDC Eviction Moratorium. (Decl. of Gainfort at ¶ 7).

Mr. Vangenewitt had a recent tenant who has fallen behind in rent and the total amount of rent as of this date, after seventeen (17) months of back rent, since the beginning of the pandemic, now exceeds Sixteen Thousand Dollars ($16,000.00). (Decl. of Vangenewitt at ¶ 4).  On August 11, 2021, Mr. Vangenewitt  appeared with counsel and the Magistrate District Judge, citing the new August 3, 2021 Eviction Moratorium postponed the matter again until October 6, 2021, despite over $16,000.00 in damages still due and owing. (Decl. of Vangenewitt at ¶ 7). These harms from the Current CDC Order continue to resonate among Landlords across the Western District of Pennsylvania.

## IV.   RELEVANT RECENT DECISIONS

There are at least four (4) federal District Courts that have considered various statutory and constitutional challenges to the Original CDC Order, and declared the Original CDC Order as unconstitutional and a violation of the Public Health Services Act. The Original CDC Order and Current CDC Order are the same in all material respects, except the current CDC order only applies if there is a high level of transmission. (Administrative Record at p. 1-12; 30-38).   Most recently and notably, The United States District Court for the District of Columbia ruled that the plain language of the Public Health Service Act 42 U.S.C. §264(a), unambiguously foreclosed the Nationwide Eviction Moratorium, and the court set aside the CDC order consistent with the Administrative Procedure Act. *See*: *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, No. 20-cv-3377, —— F.Supp.3d ——, ——, 2021 WL 1779282, (D.D.C. May 5, 2021). Judge Friedrich in *Alabama Association* followed  the  Sixth Circuit district court decision in *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, No. 2:20-cv-2692, —— F.Supp.3d ——, ——, 2021 WL 1171887, at *4 (W.D. Tenn. Mar. 15, 2021) (concluding that the CDC Order exceeded the statutory authority of the Public Health Service Act), appeal filed 992 F.3d 518 (6th Cir. 2021); *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 520 (6th Cir. 2021) (denying emergency motion for stay pending appeal) that held that the eviction moratorium  exceeded the CDC's authority under 42 U.S.C. § 264(a). Also see *Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, No. 5:20-cv-2407, —— F.Supp.3d ——, ——, 2021 WL 911720, at *12 (N.D. Ohio Mar. 10, 2021) (holding that the CDC exceeded its authority under 42 U.S.C. § 264(a)). Separately, another district court declared that the federal government lacks the constitutional

authority altogether to issue a nationwide moratorium on evictions. See *Terkel v. Ctrs. for Disease Control & Prevention*, No. 6:20-cv-564, —— F.Supp.3d ——, ——, 2021 WL 742877, at *1–2, 10–11 (E.D. Tex. Feb. 25, 2021), appeal filed, No. 21-40137 (5th Cir. 2021). *See Ala. Ass'n of Realtors*, —— F.Supp.3d at —— 2021 WL 1779282 at * 3 (collecting cases).

## V.   ARGUMENT

**A.   Section 361 Of The Public Health Services Act (42 U.S.C. § 264(a)) Limits The Secretary's Power To Specific Narrow Enumerated Actions To Stop The Spread Of A Communicable Disease, Not An Unfettered Power To Impose A Nationwide Eviction Moratorium**

Section 361 of the Public Health Service Act empowers the Secretary to "make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases" either internationally or between states.[1]   42 U.S.C. § 264(a). "For purposes of carrying out and enforcing such regulations," the Secretary is authorized to "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.* The Secretary is also authorized to, within certain limits, make and enforce regulations to apprehend, examine, and, if necessary, detain individuals "believed to be infected with a communicable disease" or who are "coming into a State or possession" from a foreign country. *Id.* § 264(b)–(d). Ala. Ass'n of Realtors, —— F.Supp.3d at —— 2021 WL 1779282 at * 4.

---

[1]"Although the statute states that this authority belongs to the Surgeon General, subsequent reorganizations not relevant here have resulted in the transfer of this responsibility to the Secretary." *Skyworks*, ____ F.Supp.3d at ____, 2021 WL 911720, at *5, as cited in *Ala. Ass'n of Realtors*, ____ F.Supp.3d at ____, 2021 WL 1779282 at *1., fn. 1.

By regulation, the Secretary delegated this authority to the Director of the CDC. 42 C.F.R. § 70.2. Pursuant to this regulation, when the Director of the CDC determines that the measures taken by health authorities of any state or local jurisdiction are insufficient to prevent the spread of communicable disease, "he/she may take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." *Id.* Ala. Ass'n of Realtors, —— F.Supp.3d at —— 2021 WL 1779282 at * 4.

Section 361 of the Public Health Service Act provides, in relevant part:

> The [CDC], with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the [Secretary] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

42 U.S.C. § 264(a). Other subsections of the Act authorize, in certain circumstances, the quarantine of individuals in order to prevent the interstate or international spread of disease. *See id.* § 264(b)–(d).

"Though the Public Health Service Act grants the Secretary broad authority to make and enforce regulations necessary to prevent the spread of disease, **his authority is not limitless**." Ala. Ass'n of Realtors, —— F.Supp.3d at ——, 2021 WL 1779282 at * 5. (Emphasis added). Hence, there must be a restriction to limit the Secretary's powers to fit within the reasonable textual limitations of the Public Health Services Act.

"Section 264(a) provides the Secretary with general rulemaking authority to "make and enforce *such regulations*," *id.* § 264(a) (emphasis added), that "in his judgment are necessary" to combat the international or interstate spread of communicable disease, *id.* But this broad grant of rulemaking authority in the first sentence of § 264(a) is tethered to—and narrowed by—the second sentence. It states: "For purposes of carrying out and enforcing *such regulations*," *id.* (emphasis added), the Secretary "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination [and] destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." *Id.* The Secretary may provide for "other measures, as in his judgment may be necessary." *Id.* But any such "other measures" are "controlled and defined by reference to the enumerated categories before it." *See Tiger Lily*, 992 F.3d at 522–23 (internal quotation marks and alteration omitted); *id.* at 522 (applying the *ejusdem generis* canon to interpret the residual catchall phrase in § 264(a))" as cited in *Ala. Ass'n of Realtors*, 2021 WL 1779282 at *5. (Emphasis added in original).

A plain reading of the Act indicates these "other measures" are limited in two significant respects: first, they must be directed toward "animals or articles," 42 U.S.C. § 264(a), and second, those "animals or articles" must be "found to be so infected or contaminated as to be sources of dangerous infection to human beings," *id.*; *see Skyworks,* —— F.Supp.3d at ——, 2021 WL 911720, at *10. In other words, any regulations enacted pursuant to § 264(a) must be directed toward "specific targets 'found' to be sources of infection." *Id.* This makes perfect sense that the purpose of the Act is to stop the threat of communicable disease by the limited ability to quarantine certain animals or articles. Indeed, the purpose of Section 361 of the Public Health Services Act

10

is to stop an infection by quarantining animals or articles, not the nationwide cessation of evictions

"The national eviction moratorium satisfies none of these textual limitations. Simply put, imposing a moratorium on evictions is drastically different in nature than "inspect[ing], fumigat[ing], disinfect[ing], sanit[izing], ... exterminat[ing] [or] destr[oying],'" Ala. Ass'n of Realtors, 2021 WL 1779282 at * 6.   Indeed, there is no logical nexus between the enumerated quarantine measures and an eviction moratorium even under the most strained reading of the Public Health Services Act.   The continuing extension of the moratorium is not warranted and patently violates the Administrative Procedures Act.

As noted by the District Court in *Ala. Ass'n of Realtors*, "In sum, the Public Health Service Act authorizes the Department to combat the spread of disease through a range of measures, but these measures plainly do not encompass the nationwide eviction moratorium set forth in the CDC Order.   Thus, the Department has exceeded the authority provided in § 361 of the Public Health Service Act, 42 U.S.C. § 264(a)." Ala. Ass'n of Realtors, 2021 WL 1779282 at * 8.   It is respectfully submitted that this Honorable Court upon the review of Section 361 of the Public Health Services Act will come to the same conclusion.

B.   **Under The Two Step Analysis Of *Chevron USA, Inc. v. Nat'l Re. Def. Council, Inc.,* 467 U.S. 837 (1984) The Statutory Text Of The Public Health Services Act Indicates The Intent Of The Congress To Limit The Authority Of The Secretary To The Enumerated Quarantine Measures**

Pursuant to the United States Supreme Court decision in *Chevron USA, Inc. v. Nat'l Re. Def. Council, Inc., 467 U.S. 837 (1984)*, the first question the Court must ask is "whether Congress has directly spoken to the precise question at issue."  467 U.S. at 842,

11

104 S.Ct. 2778. To answer that question, courts "consider the statutory text, as well as traditional tools of statutory construction." *Si Min Cen v. Att'y Gen.*, 825 F.3d 177, 186 (3d Cir. 2016). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43, 104 S.Ct. 2778. If, however, the Court finds that Congress has not directly addressed the "precise question at issue" and that the statute is "silent or ambiguous with respect to the specific issue," the Court moves onto Step Two: "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778; *Si Min Cen,* 824 F.3d at 186.

The question at issue in this case in applying the traditional tools of statutory construction is: "Whether the Secretary's power is limited under Section 361 of the Public Health Services Act?" A plain reading of the Public Health Services Act undisputedly indicates the precise question is the limited nature of the acts that can be taken by the Secretary, that are specifically identified as "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so contaminated as to be dangerous infections to human beings." 42 U.S.C. § 264(a). While the Public Health Services Act grants the Secretary authority for "other measures, as in his judgment may be necessary." 42 U.S.C. § 264(a), this is not an unbridled authority to impose nationwide eviction moratoriums. The text is limited after applying the long standing principles of *ejusdem generis* to interpret a residual clause. Indeed, the residual clause must be similar in nature to the listed measures, or it is just surplusage. *U.S. v. EME Homer City Generation, L.P.*, 727 F.3d 274, 293 (3d Cir. 2013) (holding that a similar clause allowing for "any other appropriate relief," following a "list of specific items

12

separated by commas," indicates the "other" clause is a "residual category of the same type as the preceding items"); *see also Skyworks*, ___ F.Supp.3d at _____, 2021 WL 911720 at *10.   Step One of the *Chevron* analysis is met because no reasonable interpretation of statutory construction can expand "fumigation" and "disinfection" of a potential source of infection to expand into an eviction moratorium.   Essentially, there would be no need for any enumerated articles, if the Secretary can enact any regulation without any limitation, which is not the text of Section 361.   If Congress intended to give the CDC unlimited powers to enact a regulation under Section 361, the Congress should have simply enacted such a statute.   Yet, Congress did not take this action.   Even applying Step Two of the *Chevron* analysis, if there is ambiguity, the ability to impose a continuing moratorium on evictions is simply not reasonable given the enumerated narrow list of measures in the statute.   Judge Mark Norris of the United States District Court for the Western District of Tennessee succinctly stated:

> The Court does not minimize the gravity of the pandemic nor the exigency of this hard case.   It is noteworthy, however, that Congress has neither acted to amend the Public Health Act, the CARES Act, nor provided for an ongoing moratorium on evictions as recently as the adoption of the Rescue Act last week.   It is not the Court's role to revise the Public Health Act nor any subsequent legislation through its own ingenuity when Congress could do so through legislation instead.   Judicial restraint is the order of the day.   Alexander Hamilton quoted Montesquieu in Federalist No. 78 for good reason:   "There is no liberty if the power of judging be not separated from the legislative and executive powers."   The Federalist No. 78, at 379-80 (Alexander Hamilton) (Dover ed. 2014).   This Court respects and maintains that separation.

*Tiger Lily, LLC*, ___ F.Supp.3d ____, 2021 WL 1171887 at *7.

The CDC has undisputedly overstepped its bounds by imposing and now continuing an eviction moratorium based on Section 361 of the Public Health Services

Act. The extension of the CDC Order in the face of the concurrence of Judge Kavanaugh and numerous district courts indicates blatant hubris by the CDC. It is respectfully requested this Court exercise its judicial discretion and vacate the Current CDC Order.

**C.   The Current CDC Order Violates The Impairment Of Contracts Clause Of The United States And Pennsylvania Constitution**

The impairment of contracts clause of the United States Constitution provides that no state shall pass any law impairing the obligation of contracts. U.S. Const. art. 1 § 10. The contracts clause in the Pa. Constitution provides: "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Pa. Const., art. 1, § 17. "[T]he impairment of contracts clause is not violated by a judicial determination, but only by an enactment by the legislature." *Burns v. Pub. Sch. Employees Ret. Bld.*, 853 A.2d 1146, 1154 (Pa. Cmwlth. 2004) [citing *Mariniello v. Shell Co.*, 511 F.2d 853, 859 (3d Cir. 1975)]. *See also Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924) (holding: "It has been settled by a long line of cases . . . that the provision . . . protecting the obligation of contracts against state action, is directed only against impairment by legislation and not by judgment of courts.")

A landlord and tenant residential lease agreement contains one primary element of consideration, a tenant pays rent and landlord allows the tenant to stay on premises upon receipt of the rent payment. The Current CDC Order violates this essential element of contractual rights and impairs this relationship because a tenant does not have to pay rent, and the landlord must allow the tenant to stay in the premises, despite the parties contracts. The United States Constitution provides, in relevant part, that "[n]o state shall enter into any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. In order to prove a violation of this constitutional provision, a plaintiff must demonstrate that

14

a "change in state law has 'operated as a substantial impairment of a contractual relationship.'" *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d. 727 (1978)).  Thus, Contract Clause analysis requires three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial.  *See Romein*, 503 U.S. at 186, 112 S.Ct. 1105.

It cannot be disputed that landlords and tenants have a contractual relationship. The change in the law by continuing the eviction moratorium in the Current CDC Order impairs the most basic tenants of the landlord-tenant contractual relationship because a landlord can no longer evict if no rent is paid by the tenant.  The final element is whether the impairment is substantial.  The requirement to pay rent goes to the very heart of a landlord-tenant agreement.  It is beyond cavil that this payment obligation is the most substantial element of a landlord-tenant agreement.  If it is determined that substantial impairment of a contractual relationship has occurred, the court must further inquire whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose.  *See Allied Structural Steel Co*;  *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1243 (3d Cir. 1987).

The issue of public purpose for an eviction moratorium was addressed by the Eastern District Court in *HAPCO v. City of Philadelphia*, 482 F.Supp. 337 (E.D. Pa. 2020). The District Court in HAPCO found there was a legitimate public purpose to allow a City of Philadelphia a limited eviction moratorium and, therefore, no impairment of contract

occurred. However, this was a limited moratorium and was properly legislatively enacted. In contrast, the Current CDC Order was not properly enacted as set forth in Argument A and B above. Moreover, a review of the Supreme Court Decision in *Allied Steel* indicates that the "law can hardly be characterized . . . as one enacted to protect a broad societal interest rather than a narrow class." 438 U.S. at 249. While the HAPCO Court disagreed that the class was narrow, the landlords targeted by the Current CDC Order are a narrow class because it applies to areas with substantial outbreaks of COVID. (Administrative Record at p. 37). Moreover, the Western District of Pennsylvania falls into this narrow class of persons. Furthermore, the CDC extended the eviction moratorium despite the Supreme Court directive that the Legislature must act. This is not a "broad societal interest" but a "narrow class" of residential landlords that are being targeted by the Current CDC Order.

### D.    This Honorable Court Should Vacate The Current CDC Order As A Violation Of The Administrative Procedures Act

It is respectfully submitted that the CDC has exceeded its statutory authority and, therefore, the Current CDC Order must be vacated. An administrative decision and order may be vacated or set aside where there is an error of law or where the agency exceeds its statutory authority. *Parker v. Citizens Committee for Hudson Valley*, 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970); *Citizens Committee for Hudson Val. V. Volpe*, 425 F.2d 97 (2d Cir. 1970). Indeed, courts have authority to set aside an unreasonable or unlawful decision or order. *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 165 Pa. Super. 519, 69 A.2d 844 (1949). (When an agency's rule has been found to be legally invalid under the Administrative Procedure Act, the ordinary result is vacatur.) *Center for Native Ecosystems v. Salazar,* 795 F.Supp.2d 1236 (D. Colo. 2011). Based

16

on the foregoing, vacatur of the Current CDC Order is requested.

## CONCLUSION

Based on the foregoing, Summary Judgment be granted.  It is further requested the *Temporary Halt in Residential Evictions in Communities with Substantial or High Levels of Community Transmission of COVID-19 to Prevent the Further Spread of COVID-19* (Aug. 3, 2021) (" Current CDC Order") be vacated.

Respectfully submitted,

JONES, GREGG, CREEHAN & GERACE, LLP

BY:  /s/ John P. Corcoran, Jr.
JOHN P. CORCORAN, JR., ESQUIRE
PA ID. NO. 74906
411 SEVENTH AVENUE
SUITE 1200
PITTSBURGH, PA 15219
(412) 261-6400

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR EXPEDITED SUMMARY JUDGMENT** has been furnished, via E-mail Delivery, this 25ᵗʰ day of August, 2021, upon:

STEVEN A. MYERS, ESQUIRE
SENIOR TRIAL COUNSEL
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BENCH
1100 L STREET, NW
WASHINGTON, DC 20005
(steven.a.myers@usdoj.gov)

LESLIE COOPER VIGEN, ESQUIRE
TRIAL ATTORNEY
LESLIE COOPER VIGEN
UNITED STATES DEPARTMENT OF JUSTICE
CIVIL DIVISION, FEDERAL PROGRAMS BENCH
1100 L STREET, NW
WASHINGTON, DC 20005
(leslie.vigen@usdoj.gov)

JONES, GREGG, CREEHAN & GERACE, LLP


BY   /s/ John P. Corcoran, Jr.
         JOHN P. CORCORAN, JR., ESQUIRE
         PA ID. NO. 74906
         411 SEVENTH AVENUE
         SUITE 1200
         PITTSBURGH, PA 15219
         (412) 261-6400

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania:  Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by:   John P. Corcoran, Jr., Esquire

Signature:   /s/ John P. Corcoran, Jr.

Name:   John P. Corcoran, Jr.

Attorney No. (if applicable):   74906